and John S. Pistole, Administrator, Transportation Security Administration. Mr. Clement for the Petitioners, Mr. Clare for the Respondents. Mr. Clement, good morning. Good morning, Your Honors, and may it please the Court, I'm going to endeavor to save three minutes for rebuttal. Before the 2013 Amendment, Congress required carriers to impose security fees on a per-employment basis, subject to one-way and round-trip caps. In practice, this employment-based approach meant that two passengers flying from D.C. to L.A.X. could pay different fees depending on whether or not they had a connecting flight or flew directly. But in the 2013 Budget Act, Congress opted for a simpler approach and changed the focus from employments to one-way trips. Under the new regime, every one-way trip in air transportation that originates at a U.S. airport is subject to a single $5.60 fee. Now, although generally recognizing the significance of the statutory shift from employments to one-way trips, the TSA has clung to one vestige of the ancient regime when it comes to one-way flights that originate at an airport abroad. Specifically, when it comes to such a one-way trip in air transportation that originates at a foreign airport, TSA continues to focus separately on the tail-end domestic segment and thus treats two London to Chicago passengers differently based on whether they have a direct flight from London to Chicago. Obviously, if they have a direct flight from London to Chicago, there's no fee. But if they connect through New York, in that instance, the TSA assesses a fee. Now, there's no basis in the statutory text for this differential treatment and continued focus on employments or flight segments in this one-arrow context. When a passenger flies from London to Chicago, both the one-way trip and the air transportation that makes up the one-way trip originate in London, not in an airport in the United States. It doesn't matter whether or not they connect through New York. Do you collect this fee or do your clients collect this fee irrespective of how long the stopover is? Because that definition of one-way trip is without a stopover of whatever, fewer than 10 hours, I think. Do you collect it without regard to that? No, which is to say that the stopover definition essentially determines for all purposes, both foreign trips and domestic trips, whether or not there is a subsequent one-way trip. So if somebody, the New York fellow, if he's got a stopover in New York of more than 10 hours, he doesn't get assessed? Right. 10-hour stopover, not assessed. Well, under our view, the statute should not be assessed. In current practice, based on our view of the misinterpretation of the statute, you're assessed whether you have a… That's what I'm asking. Right. Are you collecting it? Right now, we're collecting it even if it's a one-hour stopover. You collect it when they purchase the ticket? Yes, in practice. The trip doesn't have to be entirely by air transportation, does it? I think it actually does to satisfy the statute. Well, the statutory definition is pretty broad. The regulation says any part of the… Foreign air transportation is considered air transportation if any part of the trip is by aircraft. And the same with interstate. So if any part of the trip is by aircraft, then it's air transportation. That's what the statute says. I'm reading it. I'm sorry, what part of the statute are you reading from, Judge Randolph? Two definitions, 49 U.S.C. 40102. Yeah, I think what that's… Sub 23, sub 25. Yeah, I think what that's addressing are situations where you have some part of the trip is, you know, either there's a bus involved or something like that. So let's suppose that an individual living in Canada takes a train to Chicago, and then with the ultimate destination, New York City, and then Chicago then goes to the airport and hops on a plane to New York City. Under your theory, that individual, there are 100 people that get on that plane, but the one guy who comes from Toronto is exempt from the fee. I don't think so, Judge Randolph, and the reason is, I mean, in order to satisfy the statutory language, that person would have to start their trip in Canada at an airport. No, no, no, no, because the definition of air transportation, I just went over that, is if any part of the one-way trip is by air transportation, then it's considered a one-way trip in air transportation. And so the hypothetical I gave you is perfectly consistent with the statute, and yet you would exempt it. And I don't understand what the rationale behind that would be. It would be based on my reading of the statute, which is that if this doesn't say in air transportation under, this is the problem, I think, with the government's theory, is that one way or another that originates at an airport in the United States is going to modify one-way trip. It can either do it directly or it can do it indirectly, because in air transportation is all a prepositional phrase that's modifying one-way trip, and it seems to me that if they're right that that originates in the United States, modifies the air transportation, then that's not something that should be covered by the statute because the air transportation there would originate in the United States. I think our position is any way you slice it. Your position, if I understand it, is that wherever the one-way trip originates, then it has to be, to collect the fee, it has to be originating within the United States. Our position is that I think, yes, but with the caveat that in every case that we're aware of, I mean, you know, I take your hypothetical, but in every case that we're aware of, we're talking about the air transportation and the one-way trip originating at the same place. And so it's not a situation, you know, the statute doesn't say a one-way trip, it says including air transportation that originates in the United States. It says a one-way trip in air transportation that originates in the United States. So whether that originates, modifies the one-way trip directly, which I think is probably the better view, it was the view of the agency when the statute said employment, or it modifies in air transportation, either way, it's modifying something that focuses on the origination point being in the United States. And so even in the sort of crazy train hypothetical, I don't think it would be the end of the world if that isn't. Why is it crazy? You know, I think people do this. They may do it by ship. They may take a, you know, a ship to the United States from London and then get on a plane and go to California. And my point is, in all of those cases, I don't think it would be odd if the United States didn't assess a security fee, because presumably the way the statute works at this point is in those situations, they assume that some security fee is going to be imposed by the foreign authorities at the point at which the initiation takes place, and that's sort of the division of labor we're going to have, and we're going to have it based on one-way trips. And again, I think that's the other problem. I mean, I think there's two basic problems with the government's approach here. One is just textual, which is, I think, any way you slice it that originates at an airport in the United States is modifying either directly or indirectly the one-way trip. The other is a little more contextual. But, you know, you can't ignore the fact that Congress deliberately moved from an employment-based approach to a one-way trip-based approach, and all the TSA's approach here is, in this particular set of cases, is to go back to the old approach and focus on a tail-end segment in isolation. What do we do with the fact that Congress said to TSA, look, we told you we thought clearly about the round-trip cap. You didn't listen to us, so we're making it even more explicit, but they didn't touch the one-way trip knowing what TSA was, how it was interpreting it. Well, I certainly don't think you would view that as a ratification, and I think there is a difference between the two arguments. And I'll be candid, my clients are part of the reason that the statutory language changed, and their approach to Congress was, having made these arguments and essentially having a plain text argument and having an argument that relied on intent rather than the plain text, they told Congress, look, could you please change the text as to the second part, because that would really sort of cinch our argument on that point. And since we thought we were in a position to prevail on the plain text in the first instance, we didn't think there was any reason to change the text. I think if any party had the need to go to Congress and get a change in the statutory text, with all due respect, I think it was the TSA. Do you accept that TSA's argument that there's a fundamental policy difference between having one fee for transportation, using the term very loosely, starting in the United States and ending in the United States, one fee for that, as opposed to multiple fees for transportation, again using the term very loosely, starting in the United States and stopping off at multiple airports? Well, Judge Williams, I mean... I understand your argument that the airlines and the passengers may well be hit for security fees at the foreign airports, but we don't actually know much about that or what the relationships are between the airlines and these fees and where the service is funded. So, I mean, it seems like a real difference. Well, two things, Judge Williams. I mean, I'll sort of concede the policy argument to the point that if Congress wanted to change the statutory text based on that policy view, I don't, you know, I wouldn't be here arguing that that's irrational or something. But if you show an ambiguity in the statutory text, it adds up in the same place, right? Yeah, my principal interest would be spending as much time as possible trying to convince you that there's really no ambiguity in any meaningful sense here. I'm not going to tell you that that's like a completely irrational policy goal. What I would tell you, though, and I think this is probably the most important thing, is I do think that policy argument really runs contrary to the basic thrust of the change they made from an employment-based approach to a one-way trip-based approach. Because I think, you know, the original justification for charging somebody two fees when they were flying from D.C. to LAX with a connection in Chicago, as opposed to one fee if they flew direct, was that, you know, every time you have a connecting flight, you know, either you go through security or the people that are boarding your flight go through security, and there's a sense in which, you know, every time you have an employment, you have an additional sort of benefit from the screening services we provide. And that was a rational approach. As you speak, it occurs to me there's another difference, and that is when you land in the United States from abroad, you're sent through immigration and customs and so forth. Then you start fresh, an incredible nuisance, and you're checked all over again, whereas if you're just on an ordinary hop from, you know, a two-hop trip across the country, normally you don't have any second rendering of service. Well, and Judge Williams, I think it's important to recognize that in neither case is that sort of a clear rule one way or another. In other words, as the government concedes, there are certain of these connecting flights where you don't have to go through security at your first destination, even though they're international flights. And there are other domestic flights, and sadly I've had this experience, where if you have a connection where the connecting flight is in another terminal or something, you have to go through security twice. So my point is, again, I'm not here to take the strong position that, you know, it would just be irrational to distinguish this situation, but I do think it's against the thrust, because the thrust of the earlier approach, I think it was more closely tethered to the more security services you benefit from, the more you pay. And Congress said, No, we've got a one-size-fits-all based on where the one-way trip originates. I'm going to ask you another question. It won't come out of your time, but Judge Henderson will give you some rebuttal time anyway. But the anomaly described in the footnote at page 17 of your gray brief, I don't honestly understand the anomaly there. The anomaly, in fact, I could try to explain it, and obviously we tried to explain it in the brief and didn't fully succeed. But there are rules about the extent to which certain foreign carriers can operate in air transportation in the United States. Right, right. And the general way that rule operates, as I understand it, this principle of cabotage, is that there are certain flights that are basically allowed to drop off passengers at one U.S. destination, say New York, and then continue and drop off the rest of the passengers in another U.S. destination, Chicago. Right. And they are forbidden to pick up any passengers, even though that would be economically – So there's no fee for the passengers they don't pick up, which makes sense. Right, but the anomaly is just that part of the theory as to why they cannot pick up those additional passengers is that they are not properly licensed, and part of the licensing regime basically says that they can't provide air transportation that originates in the United States. And so under their theory, if you focus on that segment in isolation, well, that's air transportation that originates in the United States. So that assumes a seamless web between the cabotage rules, which are not really explained in your footnote, which for some reason I don't have in my head, the definition has got to be the same. There's a reason it was a footnote and not a separate textual full-blown argument, but in defense of including it as a footnote, I mean, I think what it shows is that there are certain sort of basic operating norms in the airline industry, and people know what a one-way trip is. And when you're flying from London to Chicago and you have a stopover in New York, it is just completely artificial, both as a matter, I think, of the textual statutory language, but also as a matter of common parlance to say, oh, well, I took a one-way trip from New York to Chicago. Now, if you had a stopover there and spent 24 hours in New York and did a little shopping and saw a show, you might say, well, you know, I had a trip to New York and kind of as part of this process. But in normal parlance, you don't talk about your connection. You talk about your connection essentially as little as you can. It's an inconvenience. But you don't think about that as being the trip. And you certainly don't when you talk about when you're flying from London to Chicago, you don't talk about the midpoint of the trip as being where either the one-way trip or the air transportation originated. And that's what the statutory language really focuses on. So if there are no further questions, I'd like to have some rebuttal on that. Thank you. Mr. Clare. Good morning, Your Honors. May I please the Court? I'm Jeffrey Clare. I'm counsel for TSA in this matter. Your Honors, as Your Honors know from the brief, we have a set of arguments concerning whether Petitioners have standing to bring this suit in the limited time allotted to me. I'd like to focus on the merits today unless there are any questions about our standing position. But I did want to make clear that we are by no means waiving that argument for the reasons set forth in our brief. Is it your position on the standing that any private entity that collects taxes imposed by the federal government, that that entity would never have standing? No, Your Honor, but the standing doctrine requires more than an injury. It requires that the injury be redressable by the court and traceable to the challenged action. And while a private entity charged with the burden of collecting fees may incur an injury, it would still have to show that that injury is redressable by the court and traceable to the challenged action. And that's where we think Petitioner's standing fails here. If there were a constitutional challenge or a statutory challenge saying that the sales tax can't be imposed at all and seeking a court order to that effect, why isn't that redressable? Well, the plaintiff in that case would have to show that they are somehow injured by the requirement. But you don't think that the elasticity of demand for airplane travel is above zero? Your Honor, the problem with that argument is that it was raised for the first time in the reply brief. It is Petitioner's burden under this Court's rules to raise that kind of – Yeah, but doesn't Sierra Club talk about things that are perfectly obvious? There's no need to address standing in such cases. Well, if it is indeed obvious from the administrative record, but you still have to make at least a statement in the brief as to the basis of your standing. And in the opening brief makes no reference to impact on consumer demand. Do you have an answer to the argument? In terms of whether there is an actual impact on consumer demand, I think it's a matter of economic theory, the sort of theory of how you determine the price of elasticity of demand. There's no evidence in the world, is there, that the price of elasticity of demand for air travel is zero? There is not, nor is there any evidence of what it might be to that effect. As long as it's positive, that's it, right? I don't want to spend too much of my time on this point, Your Honor, but the fact that there is an arguable impact on consumer demand is a matter of economic theory. It does not mean that that theory translates into the real world practical terms. You have a fee of $5.60. It's a very small amount of a consumer's disposable income. It's a very small amount of the purchase price. This is a kind of good and service for which there are no real substitutes in many instances. Your economic theory depends on things like a world of perfect information. Speaking for myself, I think your original judgment to go straight on to the merits was sound. Okay. Thank you, Your Honor. Then I will take that, the heat of that, and proceed to the merits. Your Honors, the one point I'd like to open with is that passengers on the domestic segment of a flight that originates abroad benefit from security services. In terms of the domestic connection, anytime they have to go through security, they benefit from security services. In most instances, even if you start in London or are going to Chicago and have an intermediate stop in New York, in most instances the passenger must deplane, go through customs, go through security again. There are a handful of instances where passengers are pre-cleared abroad and do not have to go through that process. Even as for those passengers, if they have to go to another domestic flight, they often have to exit the sterile area of the terminal and go back through security to get to their departure gate. And even in the limited number of cases where there is no additional screening provided to that passenger, they are still benefiting from the screening accorded to other passengers who are boarding that domestic flight. They are benefiting from the air marshals program that provides security. They are benefiting from the training of flight attendants and other crew members in security purposes, all things that the security fee is intended to fund. Now, I think it's important to keep that in mind when looking at what the statute requires. Counsel, could I ask you to respond to exactly the same definitional sections that Judge Randolph raised earlier? That's 23 and 25 of definitional sections. Interstate air transportation means transportation of passengers and various things where any part of the transportation is by aircraft. Now, that seems to contemplate a very long view of transportation in the sense of putting together all elements of the travel as transportation. So if that's so, how in this case in our classical London, New York, Chicago flight, why doesn't the transportation begin in London? Well, Your Honor, the ordinary meaning, the dictionary definition of transportation would be simply conveyance from one point to another.  Right. Of air transportation, which is the operative statutory term, it means foreign air transportation, interstate air transportation, or the transportation of mail by aircraft. That's subsection 5 of the definitional provision. Right. Then we go on to the detail in 23 and 25. If you have a flight from New York to Chicago, that is air transportation. The fact that there is additional air transportation on the passenger's individual itinerary does not mean that there is not also air transportation with respect to that domestic leg. Congress is focused here not on the passenger's itinerary. It is not really concerned with whether the passenger has stopped in New York to see a Broadway show. It seems that 23 and 25 do seem to look at, do seem to be concerned with particular trips being offered. Well, again, Your Honor, the statute uses both the term trip and air transportation. That's true. Which would suggest that air transportation has something, a different meaning than simply the trip. In light of the object and policy of the statute to impose this fee on people who are benefiting from security services, certainly the more reasonable interpretation of the statutory language is that- No, you don't have to get to more reasonable if you show the ambiguity. I'm sorry, Your Honor, I didn't hear you. You don't have to get to the question of which is more reasonable if you show ambiguity. Yes, we would certainly, we think we win this case under Chevron's step one because, in our view, Congress did have a specific intent here. It did want passenger fees imposed on any flight that originates from a United States airport. But if the court doesn't accept that, we certainly think we can win this- Can I ask you a question? This is not really directly related, but the question intrigues me in the definition that Judge Williams just talked about. Interstate air transportation- Yes, Your Honor. Is defined as including a flight from an airport in the District of Columbia to the District of Columbia. I mean, who takes flights to get to one place or another in the District of Columbia? Your Honor, I believe that's the definition of interstate air commerce in A24 of the definitional section. No, it's 25. 25. 25A3. Oh, I'm sorry. Yes, you're right. You're right. My apologies, Your Honor. What's that about? Your Honor, I just don't know. There are other anomalies in the definition. I'm sure this is not the first instance where the court would find itself puzzled by- I mean, the only one that takes flights within the District of Columbia is the President on a helicopter, I guess. Or his regulator. That could well be- No, that would fly over the District of Columbia. But, Your Honor, if I may, just returning to the thrust of our statutory argument. In our view, the statute has- there are really two operative provisions here. There is subsection A of the statute, which in our view is the statute that determines which flights can be subject to the fee. That is rather unambiguous. It says that passengers on air carriers and foreign air carriers in air transportation and interstate air transportation originating in airports in the United States are subject to this fee. There is no reference at all to trips in the basic authorizing section. Is it true that for passengers that are traveling on flights- one-way flights only within the United States- forget about the foreign thing- that this- the Budget Act reduced the amount of fees that they would have to pay? In some instances, because the statute now imposes a cap on round-trip fees that was not imposed under the regulations that were first challenged in this lawsuit, the 2013 regulations. But previously on a one-way trip, if they did a hop from New York to Chicago to Los Angeles, they would pay two fees? Yes, only two implements per one-way trip in the original regulations. In the 2013 regulations, that's $5.60 for one-way trip with no cap on round trips. And a round trip could include multiple one-way segments within the round trip. So what the statute- what the new statute does is that it reimposes, as a matter of statutory law, a cap on round-trip fees. And that issue, Petitioner, is no longer presenting here. I did- and I see I'm out of time, if I could make one last point, Your Honor, to respond to Judge Henderson's point about the effect of the new statute. I think Mr. Clement is being rather modest in saying his clients had something to do with this statute. In a legislative session not noted for great productivity, this is a statute that is a freestanding statute of past- whose only purpose is to address these provisions. Congress was obviously aware of the new regulation- the most recent regulations and their impact on the industry. It changed only the round-trip fee matter. It took no steps to overturn the agency's determination with respect to whether the domestic leg of trips originating abroad would be subject to fees. And I think in this regard, Mr. Clement has hoisted on his own petard this principle that Congress is deemed to intend an administrative interpretation to continue if it reenacts a statute without substantive change. And I think this applies with full force here with respect to the most recent statute. Did it reenact the statute or just modify a particular provision? Well, it modified the statutory limitation in Subsection C without giving any indication that it wanted to change the result in this one issue that we've been discussing at this point. Mr. Clement's argument is that everybody recognized that his clients were going to win on the language. Well, I hope that's not the case, Your Honor. In any event, we certainly don't recognize it. It shows the ambiguity and vague inferences from Congressional silence. Perhaps. I do want to ask you about the definition of one-way trip in the regulations. That is, it's continuous air transportation during which a stopover does not occur. If it goes from London to New York, stops over for two hours, and then Chicago, that's a one-way trip. Yes, and it is because stopover is also a defined term, and it means a break in travel of, in the case of transportation in the continental United States, four hours or more. And there is a longer period for international flights than it could be. I'm afraid I'm just not sure of the answer. If an international flight is involved, in some instances it's 12 hours. And there's also a different rule for flights outside of the continental United States. Alaska, for example. Longer stopovers are not deemed to be a significant interruption in the travel. Before I sit down, I have one question. I just want to make sure I understand this correctly. Your opponents argue that origination makes no sense to apply origination to anything but the one-way trip as opposed to air transportation. And one of the arguments that they mount, which on the face of it seems rather effective, is that otherwise you have a situation where you're talking about originate in intrastate air transportation. All intrastate air transportation originates in the United States. And I was taken by that argument until I realized that the definition of air transportation in the statute does not include intrastate. So in order to impose a fee, they had to put into that provision, unless they wanted to revise the rest. Because the statute only talks about foreign air transportation and interstate transportation. They had to put the intrastate in there, otherwise there was no basis for imposing a fee. Yes, Your Honor, I think that's correct. The fee limitation in Subsection C is the fee shall be 560 per one-way trip in air transportation or intrastate air transportation originating in an airport in the United States. Now, obviously, intrastate air transportation, that all originates in a U.S. airport by definition. And I take Mr. Clement's point with respect to that provision. But the originating in the United States airport provision modifies that entire preceding clause, air transportation or intrastate air transportation. And my point is just that unless they put intrastate, if they just left it air transportation without putting the intrastate, then they couldn't impose the fee on intrastate air traffic because the definition of air transportation is either foreign or interstate. That's correct, Your Honor. There is air transportation by statutory definition in the initial definitions that Your Honor is referring to that does not include intrastate air transportation. That is considered somewhat counterintuitively separate and distinct from air transportation. Within the District of Columbia. Right. And I cannot account for that language in the statute. Thank you. Thank you, Your Honor. Mr. Clement, why don't you take two minutes? Thank you, Your Honor. Your Honor, I endeavor to make just three points in rebuttal. First, with respect to the 2014 enactment, you know, neither party came in in the 28-J letter with an argument that this really changed the ballgame significantly. And so, you know, I think there's a reason the government hasn't previously made the sort of ratification argument. I don't think it works. They didn't reenact the statute. I think with all due respect, I mean, two points to make here. One is I would have been hard-pressed to tell my client what statutory change would make this any more unambiguous in terms of favoring our position. I mean, a one-way trip in air transportation originating in the United States just doesn't cover a one-way trip in air transportation originating in London. And I don't know how I'd improve on that with a proposed amendment. The second thing is if this thing has any impact on either side's argument, I think it strengthens our argument. Because in imposing the statutory round-trip cap, the Congress actually kind of doubled down on the idea of this notion of a trip. And interestingly, they put into the statute for the first time something that had been a regulatory term, origin point. Because to figure out if it's a round trip, you have to know the origin point. Now, Congress knows the origin point of a round trip. It's where it started. And then if it ends where it started, that's a round trip. And one of the many anomalies of their position is that if you had a trip that started in London, went to New York, and then to Chicago, and then back again, the origin point for that under the statute would clearly be London. But somehow, for purposes of the one-way trip fee analysis, it's going to originate in some measure in New York. It just doesn't work. The same thing is true in terms of the regulatory definition, which you alluded to, Judge Henderson. It's no question it's a regulatory matter. If there's not a 12-hour stopover in New York, there's a one-way trip that starts in London and ends in Chicago. There's only one one-way trip under the regulatory definition. But somehow, in interpreting this one statutory provision, they're divining some one-way trip there that starts in New York. It just doesn't work. And the last thing I'll say is just as to the relationship between A and C, that argument just doesn't work at all. It doesn't work for at least two reasons. One is consequences. The consequence of their argument that A gives them some authority un-cabined by C is that they could actually put a $20 fee on this tail-end segment, because it's not covered and limited by C. The bigger problem is, especially with the 2013 amendments, that Section C now says that the fee imposed under A1 shall be. It used to say may not exceed, and that sort of allowed you to think about the two provisions operating a little bit differently. But now C says fees imposed under subsection A1 shall be. There's an identity between the fee imposed, essentially authorized under A1, and the fee imposed under C. The other thing there's an identity in this statute, with all due respect, is the one-way trip in the air transportation. It's a one-way trip in air transportation. And whether or not that originates in the United States modifies the air transportation that makes up the one-way trip or modifies the one-way trip itself, this is about as unambiguous as it gets. This is what Step 1 of Chevron is for. Thank you, Your Honors.
judges: Henderson, Williams, Randolph